IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| KEVIN YOUNG, | § | |
| Institutional ID No. 106548 | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 1:24-CV-00113-BU |
| | § | |
| FNU MUHIRE, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Kevin Young, an inmate at Texas Department of Criminal Justice (TDCJ) Formby Unit, brings this action against Defendants FNU Muhire and an unidentified Abilene police officer, (collectively, "the Defendants"), alleging that they violated his constitutional rights. Young's claims are subject to judicial screening under 28 U.S.C. §§ 1915, 1915A because Young has been granted leave to proceed *in forma pauperis*, Dkt. No. 5, and he sues government officials, *see* Dkt. No. 1. For the reasons below, the Court should find that Young's claims survive judicial screening in part and should be dismissed in part.

## I. JURISDICTION

Young brings his claims under 42 U.S.C. § 1983, providing the Court with subject-matter jurisdiction under 28 U.S.C. § 1331. Dkt. No. 1. Venue is proper in the Northern District of Texas, Abilene Division, because Young's claims arise from his arrest at

Abilene Police Department located in Taylor County, Texas. 28 U.S.C. § 1391(b)(2). The undersigned has the authority to enter these Findings, Conclusions, and Recommendations after United States District Court Judge James Wesley Hendrix transferred Young's case to the undersigned for preliminary screening. Dkt. No. 10; 28 U.S.C. § 636(c)(1). Young has not consented to the undersigned exercising the full jurisdiction of this Court.

## II.  FACTUAL BACKGROUND

For purposes of screening a plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) or 1915A, a court must accept well-pleaded factual allegations as true and construe them in a way that most favor the plaintiff. *Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 419 (5th Cir. 2017). A court may look to the plaintiff's allegations in their complaint, responses to a questionnaire, authenticated prison or jail records, and testimony provided at a *Spears* hearing. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999); *see also Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may consider authenticated medical and prison records).

On November 13, 2023, the Abilene Police Department (APD) arrested Young for public intoxication and brought him to Taylor County Jail (TCJ). Dkt. No. 17 at 3. Shortly arriving at TCJ, Young informed the arresting officer that his face was bleeding. *Id*. at 4. In response, the officer grabbed the back of Young's head, pulled his hair, and then proceeded to throw Young's face into the cell bars with "full force[.]" Dkt. Nos. 1 at 4, 17 at 5. At the time of the incident, Young was handcuffed. Dkt. No. 17 at 5. Further, Young claims that the officer did not issue any orders or directions in the moments leading up to the use of force. *Id*. at 4.

Young was then placed in a restraint chair with his face covered. *Id*. at 6. Young stated he was placed in the chair approximately ten minutes after arriving at TCJ and remained there overnight *Id*. at 7. During his confinement in the chair, Young was not allowed to use the restroom. *Id*. Young was not provided any food nor water when in the chair. *Id*. The guards at TCJ would "come into the room and [] just check" on Young. *Id*. at 8. The first few guards who entered the room would "walk around" Young and then proceed to exit. *Id*. at 9. Young could not see these guards because of his face covering. *Id*. at 8. However, "the 3rd or 4th time" a guard entered the room, Young asked to get out of the restraint chair. *Id*. at 9. Young recognized the voice that responded as belonging to officer Muhire. *Id*. at 8-9. Young claims that Muhire answered him stating, "that he liked me and said he was going to rape and kill me." *Id*. at 9. Despite these threats, Muhire did not cause Young any physical harm during his incarceration at TCJ. *Id*. at 10.

Young suffered a head injury because of this use of force, which he describes as "a huge gash in my forehead and was leaking blood." *Id*.  at 5. He did not receive any medical treatment for these injuries at TCJ, but he did seek treatment after he was released. He was prescribed Ibuprofen. *Id*. at 6.

### III.  THE PARTIES

Young initiated this action against an unidentified police officer with the Abilene Police Department, named FNU LNU for docketing purposes, and FNU Muhire, a correctional officer with TCJ. Dkt. No. 1 at 3. A review of the authenticated records

indicates that Young was arrested by Matthew Clopton on the night in question.[1] *See* Dkt. No. 19. **Thus, the Clerk is directed to substitute Matthew Clopton for FNU LNU #1**.

## IV.  LEGAL STANDARDS

A court must dismiss a complaint filed *in forma* pauperis or by a prisoner against a government entity or employee if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B); 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*).

A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in fact if it rests upon clearly baseless factual contentions and it lacks an arguable basis in law if it contains indisputably meritless legal theories. *See id.* at 327; *Geiger v. Jowers*, 404 F.3d 371, 373 (5th Cir. 2005).

Dismissal for failure to state a claim "turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v. Bank of Am., N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (per curiam) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam)). Thus, if a plaintiff "plead[s] facts sufficient to show" that the claims asserted have "substantive plausibility" by stating "simply, concisely, and directly events" that they

---

[1] To aid in its judicial screening, the undersigned requested authenticated records from APD and TCJ. Dkt. Nos. 12, 18. APD's records included an arrest report and video from Clopton's dashcam and bodycam, neither of which captured the alleged use of force. Dkt. No. 18. TCJ also submitted records to the undersigned but these records were not used in the above analysis.

contend entitle them to relief, the claims should not be dismissed even if the plaintiff fails to state the proper legal theory. *Johnson*, 574 U.S. at 11–12 (citing Fed. R. Civ. P. 8(a)(2)–(3), (d)(1), (e)).

For claims to be substantively plausible, a plaintiff must plead facts that permit the court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). Even pro se plaintiffs must plead facts that raise the right to relief above a speculative level. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)). And when plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

When assessing the sufficiency of factual allegations, courts accept *well-pleaded* factual allegations as true. *Chhim,* 836 F.3d at 469. "Well-pleaded" does not necessarily mean detailed, but it "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A complaint that "tenders naked assertions devoid of further factual enhancement," or puts forth "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" will not suffice. *Id.* (internal citations omitted). Dismissal is appropriate where the complaint is devoid of facts to establish *any one* of the required elements of the claim asserted. *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995) (emphasis added); *see also Chhim*, 836 F.3d at 469.

In assessing the factual sufficiency of a prisoner's allegations, the Court must

consider not only the operative complaint, but also any supplementation to that complaint through documents attached to or referenced in the complaint, the prisoner's questionnaire responses, and the prisoner's *Spears* hearing testimony, if any. *Howard v. King*, 707 F.2d 215, 220 (1983) ("[T]he court was required to look beyond the inmates' formal complaint and to consider . . . materials subsequently filed"); *Eason v. Holt*, 73 F.3d 600, 603 (1996) (*Spears* hearing testimony remained part of the pleadings even after prisoner amended complaint); *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (responses to a questionnaire are incorporated into the plaintiff's pleadings). The Court may also consider other reliable evidence such as the authenticated prison records. *See Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference.").

When evaluating a complaint under these standards, courts liberally construe pro se pleadings, holding them to "less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). But "liberal construction does not require that the Court . . . create causes of action where there are none." *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465-B, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013). "To demand otherwise would require the 'courts to explore exhaustively all potential claims of a *pro se* plaintiff'" and would "'transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party.'" *Jones v. Mangrum*, No. 3:16-cv-3137, 2017 WL 712755, at *1 (M.D. Tenn. Feb. 23, 2017) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

Ultimately, "'[d]etermining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 899 (5th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 679).

## V. ANALYSIS

### A. Excessive Force Claim Against Clopton

Young claims that Clopton without reason grabbed the back of his head and threw his face into the cell bars at TCJ. Dkt. No. 1 at 3.

To state a claim under § 1983, Young must plausibly "allege facts showing that a person, acting under color of state law, deprived him of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Bryant v. Mil. Dept. of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010). When addressing an excessive force claim brought under § 1983, the analysis begins by identifying the specific constitutional right implicated by the application of force. *Graham v. Connor*, 490 U.S. 386, 395 (1989) (citing *Baker v. McCollan*, 443 U.S. 137, 144 (1979) ("The first inquiry in any § 1983 suit" is "to isolate the precise constitutional violation with which [the defendant] is charged"). The plaintiff's status at the time the force informs this decision.

During the underlying events, Young was at times both an arrestee and a pre-trial detainee. If Young were a pre-trial detainee at the time, his claim would be considered under the Fourteenth Amendment. Alternatively, if the force was employed during the course of his arrest, the undersigned would analyze the claim under the Fourth Amendment. Based on Young's pleadings, the undersigned concludes that the excessive force occurred

during the course of his arrest. Though Young states he was on TCJ property at the time of the incident, he indicates that he had only been so within a few minutes. Thus, it is unlikely that he had been transferred to TCJ's custody. Further, the incident itself suggest that Young was likely still subject to Clopton's control and custody. Thus, Young's excessive force claim arises under the Fourth Amendment because he allegedly sustained injuries during his arrest.[2] *See* Dkt. No. 4 at 5; *Graham*, 490 U.S. at 395 ("Today we make explicit what [has been] implicit . . . and hold that *all* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the Fourth Amendment and its reasonableness standard . . . ." (internal quotation marks omitted)); *Estate of Aguirre v. City of San Antonio*, 995 F.3d 395, 406 (5th Cir. 2021).

"To establish excessive force under the Fourth Amendment, a plaintiff must demonstrate '(1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable.'" *Hutcheson v. Dallas County, Texas*, 994 F.3d 477, 480 (5th Cir. 2021) (quoting *Pena v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018). "The 'second and third elements collapse into a single objective-reasonableness inquiry' determined by

---

[2] This distinction is necessary to determine the appropriate framework but, ultimately, would not alter the outcome of the analysis. As discussed above, the Fourth Amendment analysis requires the plaintiff show both and injury and that the force was unreasonable. *Hutcheson*, 994 F.3d at 480. If Young were determined to be pre-trial detainee, the Fourteenth Amendment would be implicated. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). The Fourteenth Amendment utilizes similar standards in that it requires the plaintiff show the force used against them was purposeful and unreasonable. *Id*. Accepting Young's well-pleaded facts as true, the undersigned finds that he has stated a plausible claim for excessive force under the Fourteenth Amendment for the same reasons discussed above.

the crime's severity, the suspect's threat, and whether the suspect is actively resisting arrest or trying to flee." *Id.*

Accepting all of Young's well-pleaded facts as true, the undersigned concludes that he has stated a plausible claim for excessive force. Young states that he suffered a head injury because Clopton, without reason, slammed his face into the bars of a jail cell. Young pleads he was restrained at the time, arrested for a nonviolent crime, and did not engage in any unreasonable or threatening conduct in the moments immediately prior to the incident. Given these allegations, the undersigned finds it plausible that the force Clopton allegedly used against Young was excessive to the need and objectively unreasonable.

### B. Remaining Constitutional Claims

Young also alleges that his constitutional rights were violated when he was a pre-trial detainee at TCJ. These violations stem from (1) Muhire's threats to kill and rape him and (2) his confinement in the restraint chair.

When an incarcerated person claims a violation of his federally protected rights, the source of that claim flows from different constitutional provisions depending on whether the person has been convicted or not. *Hare v. City of Corinth, Miss*., 74 F.3d 633, 639 (5th Cir. 1996) (quoting *DeShaney v. Winnebago County Dep't of Social Servs*., 489 U.S. 189, 200 (1989). A convicted prisoner's rights "spring from the Eighth Amendment's prohibition on cruel and unusual punishment" and, in extreme situations, the substantive due process provision of the Fourteenth Amendment. *Id.* (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In contrast, a person who has merely been accused of a crime is protected by both the procedural and substantive provisions of the Fourteenth

Amendment's Due Process Clause. *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520 (1979). Because Young was a pretrial detainee at the time his claims arose, his rights to basic human needs were secured by the Fourteenth Amendment of the United States Constitution. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983); *see also Hare*, 74 F.3d at 639.

Pretrial detainees may bring Fourteenth Amendment claims under two alternative theories: (1) an episodic-act-or-omission claim or (2) a condition-of-confinement claim. *Hare*, 74 F.3d at 644–45; *see also Shepherd v. Dallas Cnty.*, 591 F.3d 445, 452 (5th Cir. 2009). An episodic-act-or-omission claim "faults specific jail officials for their acts or omissions." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 463 (5th Cir. 2015) (internal quotation omitted). For these claims, the pretrial detainee must show that the official acted with the same subjective deliberate indifference announced in *Farmer*.

In contrast, a condition-of-confinement claim alleges that a general condition of confinement within a jail operate as an unconstitutional pattern or policy. *See Shepard*, 591 F.3d at 452. In this situation, the policy or practice that allows the condition to exist is presumptive evidence of subjective intent on the part of the state or the officials who implement it. *Hare*, 74 F.3d at 644. Thus, the official's state of mind is not in question. The inquiry instead focuses on whether the detainee can establish: (1) a rule, policy, or sufficiently pervasive pattern or practice,[3] (2) that was not reasonably related to a legitimate

---

[3] This is the same test for determining the existence of a policy or practice under *Monell*. And as with *Monell* liability, a policy can be express or reflected in an "unstated or de facto policy, as evidenced by a pattern of acts or omissions 'sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials, to prove an intended condition or practice.'" *Shepherd v. Dallas County*, 591

governmental objective, and (3) that caused a violation of the detainee's constitutional rights. *Duvall v. Dallas County, Texas*, 631 F.3d 203, 207 (5th Cir. 2011).

### 1. Muhire's threats

Young claims that when he was in the restraint chair, Muhire approached him and threatened to kill and rape him. Dkt. No. 17 at 8, 9. The undersigned construes this allegation as an episodic-act-or-omission claim. However, the Fifth Circuit Court of Appeals has long recognized that verbal threats made by a correctional officer do not constitute a basis for a § 1983 claim, even if true. *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (*citing McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983)). Though, if true, Muhire's threats are "unprofessional and inexcusable," they do not entitle Young to relief under §1983. *See Johns v. Miller*, 2005 WL 3592248, at *7 (E.D. La. Oct. 26, 2005) (citations omitted).

For these reasons, the undersigned RECOMMENDS the Court DISMISS Young's claims against Muhire.

### 2. Restraint Chair

Young claims that he was held in the restraint chair overnight without food, water, the ability to stretch, or the opportunity to use the bathroom. Further, despite suffering from a head injury, Young states that he never received medical care when restrained. Young does not allege that he was placed in the restraint chair because of a TCJ policy or that the

---

f.3d 445, 452 (5th Cir. 2009) (quoting Hare, 74 F.3d at 645. But "[p]roving a pattern is a heavy burden, one that has rarely been met in our caselaw." *Id*.

use of the restraint chair was a part of a greater TCJ pattern. Thus, the undersigned will evaluate this claim as an episodic-act-or-omission.

In the context of a pre-trial detainee, a court may evaluate the use of the restraint chair under either excessive force standards or deliberate indifference standards. *Brooks v. Taylor Cnty.*, No. 1:20-CV-049-H, 2021 WL 4458380, at *6 (N.D. Tex. Sept. 29, 2021); *Moreno v. Hidalgo Cnty.*, No. 7:24-CV-0344, 2025 WL 2043978, at *13 (S.D. Tex. June 6, 2025), *report and recommendation adopted*, No. 7:24-CV-00344, 2025 WL 2044192 (S.D. Tex. July 21, 2025) (citing *Lindley v. Montgomery Cnty.*, 2021 WL 3860752, at *3-4 (S.D. Tex. Aug. 27, 2021). The latter standards apply if an official failed to tend to the detainee's basic needs when they were in the restraint chair. *Id*. at *14. However, to state a claim for compensatory damages under either, the plaintiff must allege the constitutional violation resulted in a physical injury. *See* 42 U.S.C. § 1997e ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]").

As relief, Young seeks to "sue the officer and the guards that helped him[.]" Dkt. No. 1 at 4. The undersigned construes this statement as a request for compensatory damages. Thus, Young must plausibly allege he suffered a physical injury because of t he was confined in the restraint chair. However, the only injury Young alleges is the one he sustained to his forehead because of Clopton's use of force prior to him being restrained in the chair.

Because Young has failed to satisfy the physical injury requirement, the undersigned RECOMMENDS the Court DISMISS his Fourteenth Amendment claim based on his confinement in the restraint chair.

## VI.  LEAVE TO AMEND

Still, there is the issue of whether the Court must give Young leave to amend his complaint. Generally, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014), or where a plaintiff has already received an opportunity to amend his or her claims, *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 556 (5th Cir. 2007).

## VII.  CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that the Court DISMISS Young's constitutional claim arising from Muhire's threatening language and his confinement in the restraint chair. Further, the undersigned RECOMMENDS that the Court find that Young's excessive force claim against survives judicial screening.

## VIII. RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

## IX.  TRANSFER OF CASE

Having completed the preliminary screening of Young's claims, the undersigned ORDERS that this case be TRANSFERRED back to the docket of the United States District Judge and designated as Civil Action No. 1:24-CV-00113-H.

ORDERED this 6th day of August 2025.

_____

JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE